IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| L&B SERVICES, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:17-cv-03175-MDH |
| | ) | |
| STAR CONSTRUCTION, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Star Construction, LLC's, Motion for Partial Summary Judgment. (Doc. 77).

## LEGAL STANDARD

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

1

**BACKGROUND**

This matter arises from a contract dispute concerning payment for work performed by a subcontractor. Defendant Star Construction, LLC, entered into a Master Contractor Agreement (MCA) with Windstream Supply, LLC, in which Star would perform work involving the placement of telecommunications lines underground. Payments to Star were made on a per-unit basis. Generally, one foot of buried material was equal to one unit. Pursuant to the MCA, Star subcontracted with Plaintiff L&B Services, LLC, to perform some of the work. The MCA and all subsequent addenda, amendments, or modifications were incorporated into the subcontract. The subcontract permitted Star to withhold payment for, among other things, L&B's failure to comply with the terms and conditions of the subcontract and its associated documents. The subcontract indicated that time was of the essence regarding the performance of L&B's obligations.

The subcontract required L&B to submit its invoices or daily billing sheets no later than Monday for any work performed the preceding week. A provision of the subcontract stated that an invoice or daily billing sheet would not be paid if L&B submitted it more than thirty days after the day on which the work was performed, unless there was a "viable reason" that the invoice was not submitted within thirty days. Timely submission of invoices or daily billing sheets were a material provision of the subcontract due to Star's financial reporting obligations under the Sarbanes-Oxley Act. L&B's corporate representative stated during a deposition that L&B was required to make timely submissions to be entitled to payment. In December 2016 and January 2017, L&B submitted eighteen invoices to Star with a total value of $94,674.38. These invoices were more than thirty days late and some were up to eight months late. During the deposition of John Lorenz, one of L&B's corporate representatives, Mr. Lorenz stated that the

failure to submit the invoices was voluntary and done in an effort to stay under the estimate of what would be required to complete the job. And another corporate representative stated during a deposition that L&B had no expectation of receiving payment at the time the work was performed.

The subcontract contains two provisions that make payment by Windstream to Star a condition precedent for payment from Star to L&B for work performed. They are, in essence, "pay-if-paid" provisions. Windstream would accept, correct, or refuse to pay invoices submitted by Star, based on L&B's invoices, and Windstream would issue payment to Star only after each job was completed. During the course of the work, Star would make advance payments to L&B based on L&B's invoices, and Star would later adjust those payments through takebacks or upward adjustments based on Windstream's payments to Star. The subcontract provided Star with the right to take back payments it advanced to L&B if Windstream ultimately refused to pay Star.

The subcontract prohibited L&B from subcontracting any part of the work to be performed without the written consent of Star. The MCA made Star responsible for all of its subcontractors', and their subcontractors', compliance with the MCA's insurance requirements. L&B used subcontractors on a number of its jobs for Star, and it did not receive written consent from Star to use subcontractors on those jobs. During the course of the work, L&B issued decals of the L&B logo to its subcontractors. Those subcontractors put the logos on their vehicles. During the deposition for one of L&B's corporate representatives, the corporate representative admitted that someone driving by would think L&B, not a subcontractor, was performing the work.

**DISCUSSION**

This matter comes before the Court on a Motion for Partial Summary Judgment. Defendant Star Construction, LLC, seeks summary judgment on various categories of work, and their corresponding damages, on the basis that L&B cannot prove its breach of contract claim as to those categories. Star begins its Suggestion in Support with an introductory section summarizing the difficulties the parties have encountered in identifying the damages, and the theories underlying those damages, to which L&B believes it is entitled. Star's summary depicts what could easily be construed as intentional smokescreening by L&B and its corporate representatives, who have presented moving targets with regard to damages numbers. As of the time of the filing of this motion, Star claims that L&B still has not identified the specific dollar amounts that make up its damages claims, even after this Court told it to do so during a telephone conference concerning discovery deadlines. However, Star has identified what it believes are the four categories of work for which L&B claims entitlement to payment under the subcontract, and it seeks summary judgment on each of those four categories of work. The Court will address each of these four categories in turn. Star notes in its suggestions in support that these four categories of work likely involve overlapping damages.

**I. Summary Judgment and Rule 56**

Before the Court begins its analysis of the substantive legal issues, the Court must address L&B's utter failure to comply with the mandates of Federal Rule of Civil Procedure 56 and this Court's Local Rule 56.1.

> (a) Supporting Suggestions. A party moving for summary judgment must begin its supporting suggestions with a concise statement of uncontroverted material facts. Each fact must be set forth in a separately numbered paragraph and supported in accordance with Fed. R. Civ. P. 56(c).

> (b) Opposing Suggestions.
>
> 1. A party opposing a motion for summary judgment must begin its opposing suggestions by *admitting or controverting each separately numbered paragraph in the movant's statement of facts*. If the opposing party controverts a given fact, it must properly support its denial in accordance with Fed. R. Civ. P. 56(c). Unless specifically controverted by the opposing party, *all facts set forth in the statement of the movant are deemed admitted for the purpose of summary judgment.*
>
> 2. If the opposing party relies on any facts not contained in the movant's suggestions, the party must add a concise listing of material facts. *Each fact in dispute must be set forth in a separately numbered paragraph* and properly supported in accordance with Fed. R. Civ. P. 56(c).

United States District Court for the Western District of Missouri, Local Rule 56.1 (emphasis added). L&B did not comply with any aspect of these rules. L&B did not respond to any of the facts set out in Star's statement of uncontroverted facts; it made no effort to admit or deny any fact that Star claims is uncontroverted. This includes those facts that L&B might have successfully objected to as legal conclusions. Furthermore, L&B did not provide its own statement of facts. L&B's suggestions in opposition supplied a "Background" section that just summarizes basic background facts and L&B's legal position. It does not cite to a single piece of evidence in the record. The suggestions filed by L&B do make reference to an affidavit form signed on the same day the suggestions were filed. This affidavit contradicted the testimony provided during the affiant's deposition in several significant respects. L&B weaves these new facts from the affidavit into its legal argument. L&B's response to summary judgment is unacceptable in that it clearly violates the provisions and demands of Local Rule 56.1.

As a result of L&B's failure to comply with basic summary judgment procedures required by the Federal Rules and this Court's local rules, the Court will deem as admitted every fact asserted by Star in its statement of uncontroverted facts. Furthermore, the Court will disregard every fact asserted by L&B in its suggestions in opposition because none were set forth

in compliance with Local Rule 56.1 and no supporting references to evidence were made in the appropriate manner. *See Bland v. O.P. & C.M.I.A.*, Case No. 4:12-cv-01401-SOW, 2014 WL 12102171, at *1 n.1 (W.D. Mo. Feb. 25, 2014), *aff'd*, 575 Fed. App'x 701 (8th Cir. 2014) (deeming facts not properly controverted to be admitted); *see also U.S. ex rel. Estate of Donegan v. Anesthesia Assocs. Of Kansas City, PC*, Case No. 4:12-cv-00876-DGK, 2015 WL 3616640, at *4 (W.D. Mo. June 9, 2015), *aff'd sub nom.*, 833 F.3d 874 (8th Cir. 2016) (rejecting additional statements of fact from non-moving party).

## II. Applicable Law

This matter initially involved three claims against three defendants. However, the claims against Dycom Industries and Windstream Communications have been dismissed, as were Counts II and III against Star Construction. The only remaining claim in this matter is L&B's breach of contract claim directed at Star Construction. "Under Missouri law, '[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1188 (8th Cir. 2015) (alteration in original) (quoting *Smith Flooring, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 941 (8th Cir. 2013). In Missouri, " 'summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document.' " *Id.* (alteration in original) (quoting *Deal v. Consumers Programs, Inc.*, 470 F.3d 1225, 1229 (8th Cir. 2006). The court examining the contract must enforce the contract as written if it uses plain and unequivocal language. *Id.*

## II. Payment for Invoices

The first category of work identified by Star involves the work submitted in the late invoices. Star asserts that, under the subcontract, L&B is not entitled to payment for invoices submitted more than thirty days after the work to which those invoices relate was performed. It is admitted that the invoices were late, sometime as much as eight months late. Furthermore, the substance of the contract's meaning is admitted by L&B. Indeed, L&B does not dispute the contract's meaning in its suggestions, but rather presents facts that it claims establish a genuine issue of material fact regarding this issue. However, the Court is rejecting those facts, including an inadmissible self-serving affidavit, due to L&B's failure to comply with the procedural rules for summary judgment.[1] Under the facts this Court deems admitted, L&B voluntarily chose to not submit its invoices so as to avoid going over its estimate, and L&B did not expect to bill for this work or receive payment for it.

Therefore, the Court will grant summary judgment as to any claim by L&B that it is entitled to payment on the eighteen invoices at issue, which were submitted late.

---

[1] And even if the Court were not rejecting L&B's facts on that basis, the Court would reject the assertions of fact set forth by L&B as improperly supported by evidence that is not admissible for the purposes of summary judgment. L&B cites a self-serving affidavit signed by John Lorenz, one of L&B's corporate representatives, that contradicts the earlier deposition testimony given by Mr. Lorenz. This affidavit, attached to L&B's Suggestions in Opposition as Exhibit 2, was signed on the same day as L&B submitted its Suggestions in Opposition. Given these facts, the Court is left to conclude that this affidavit is little more than a sham designed to address Star's arguments at the last possible moment. A district court is under no obligation to consider an affidavit that contradicts deposition testimony where the conflict appears to be a sham intended to create an issue of fact. *Camfield Tires, Inc. v. Michelin Tire Corp.* 719 F.2d 1361, 1365-66 (8th Cir. 1983).

### III. Pay-if-Paid Provision

Sections 9(c) and 10(a) of the subcontract contain provisions stating that L&B would be entitled to payment only after Star received payment from Windstream for work completed by L&B. The Court has deemed admitted the fact that Windstream has not paid Star for work performed by L&B in an amount totaling $218,970.27. L&B again relies on the same inadmissible self-serving affidavit to attempt to create a genuine dispute of material fact. L&B argues that Star has not provided "concrete proof" as to what Windstream has not paid, nor has Star explained why Windstream has not paid it. However, this ignores two key facts. First, Star has submitted evidence concerning the jobs for which it was not paid and the amounts for which it was not paid. That evidence has been deemed admitted due to L&B's failure to challenge it through the proper summary judgment procedures. Second, L&B's argument raises only some vague, metaphysical doubt about the facts, to the extent that it can be said to raise doubts at all. The subcontract explicitly lays the risk of non-payment at the feet of L&B, not Star. To the extent that L&B asserts Star is at fault for any non-payment by Windstream, L&B must present evidence to support that contention. It has not done so.

Therefore, the Court will grant summary judgment as to any claim by L&B that it is entitled to payment for any work for which Windstream did not pay Star.

### IV. L&B's Subcontractors

The third category of work identified by Star is that work completed by L&B's subcontractors rather than L&B itself. Star indicates that the "vast majority" of L&B's claim for damages relates to this work. The subcontract explicitly prohibited L&B from subcontracting out any work without the written permission of Star. However, as has been deemed admitted, L&B did subcontract out some of its work without the written permission of Star, and it even provided

its subcontractors with L&B logo decals to make the subcontractors' vehicles look like L&B vehicles. It has further been admitted that L&B is not entitled to payment for any work that it did not actually perform.

L&B again relies on facts, which this Court rejects due to L&B's failure to abide by the basic procedures for summary judgment motions, to create a genuine issue of material fact. Specifically, while L&B presents additional facts that it argues demonstrates that Star waived the written permission requirement. L&B does not challenge the validity of the contract provision or its meaning. L&B only presents new facts that it claims demonstrate waiver. The Court will not consider these facts.

L&B has presented no admissible evidence that the subcontractors it hired were hired in accordance with the subcontract's requirements. Based on the facts admitted by L&B, the Court concludes that L&B used subcontractors without the written permission of Star. Doing so was a violation of the subcontract, and L&B is not entitled to payment for work performed by its subcontractors in violation of the subcontract.

Therefore, the Court will grant summary judgment as to any claim by L&B that it is entitled to payment for work performed by its subcontractors.

## V. Underground Rock Boring

The fourth and final category of work identified by Star is underground rock boring for which L&B claims it is entitled to payment. The invoices for this work was coded with the unit codes BM61R and BM61RF. Star's position is that L&B did not actually perform the work and is not entitled to payment. In some cases, L&B never received payment from Star, and, in others, Star took back certain amounts it paid to L&B upon Windstream's refusal to pay for the billed work. Windstream's refusal, according to Star, was based on the fact that the underground rock

9

boring had not been done at all or the boring did not go through solid rock. L&B's corporate representatives admitted two key points during their depositions. First, in order to obtain relief on their claims on breach of the subcontract pertaining to this work, L&B must prove that underground rock boring was, in fact, performed, and L&B must further prove that rock was encountered during the boring process. Second, the L&B corporate representatives further admitted that expert testimony would be necessary to prove whether rock was encountered during the boring process and whether rock boring was performed at all. Even a witness standing on site and observing would need to have specialized knowledge, skill, training, experience, or education to know whether the boring was performed through rock. The necessity of expert testimony to provide sufficient proof of L&B's work was admitted by L&B as a result of its failure to controvert Star's statement of uncontroverted facts. However, L&B never designated an expert witness, retained or non-retained, in this case. Therefore, Star argues that L&B cannot prove its claim that it is entitled to payment for this work. The Court notes that these factual claims — and perhaps even legal conclusions — were admitted by L&B as a result of its failure to address Star's statement of uncontroverted facts in the manner required by Local Rule 56.1.

L&B asserts that its field supervisor, Cody Glenn, would contact Star's field supervisor each time L&B's crews encountered rock, and that Glenn would receive authorization to perform rock boring from Star's field supervisor. L&B argues that this establishes a genuine issue of material fact as to whether L&B performed the rock boring for which it claims entitlement to payment. First, L&B again relies on its additional statements of fact to attempt to create a genuine dispute of material fact. As this Court has stated previously, it will not consider any of L&B's additional statements of fact because they do not comply with the summary judgment procedures. Second, the Court notes that one piece of evidence relied upon by L&B is a last-

second, self-serving affidavit referring to "work order authorizations." The Court notes that the presence of a "work order authorization" for rock boring does not demonstrate that rock boring was actually performed; it only proves that L&B was authorized to perform it if necessary. L&B's own corporate representatives admitted that L&B was entitled to payment only for work it actually performed. The issue here is whether L&B actually performed rock boring. Its own corporate representative admitted at deposition that specialized knowledge would be necessary to know whether rock boring was taking place. No facts were properly asserted or supplemented in L&B's legal response to summary judgment indicating rock boring actually occurred or that Star was compensated for rock boring by Windstream.

L&B's admissions are clear: expert testimony is necessary to prove that L&B actually performed the work for which it sought payment as it relates to underground rock boring. L&B did not designate an expert, retained or non-retained, to testify as to whether any boring done was through solid rock.

Therefore, the Court will grant summary judgment on any claims by L&B that it is entitled to payment for underground rock boring on the jobs at issue in this case.

## CONCLUSION

Therefore, the Court hereby **GRANTS** Defendant Star Construction, LLC's, Motion for Partial Summary Judgment. (Doc. 77). Summary Judgment is hereby **GRANTED** on each of the claims for damages set out in this Order.

**IT IS SO ORDERED:**
Date: July 10, 2018

           */s/ Douglas Harpool*
           **DOUGLAS HARPOOL**
           **UNITED STATES DISTRICT JUDGE**